DIXON, Justice.
Defendant, Reginard B. Morrison, was charged by bill of information with second degree murder in violation of R.S. 14:30.1. On January 14, 1976, after a trial by jury, defendant was found guilty as charged. Subsequently he was sentenced to serve life imprisonment at hard labor without benefit of probation, parole or suspension of sentence for a period of forty years. He now appeals his conviction and sentence to this court.
On April 28, 1974 Melinda Morrison, defendant’s wife, following an argument with defendant, went to defendant’s mother’s house, taking her child with her. Subsequently defendant arrived, took his wife out of the house and attempted to take her home, apparently using force. Carrie Morrison, defendant’s mother, sent a child inside her house to fetch Lawrence Holmes to separate the couple. Holmes came out of the house and apparently tried to stop the fighting. At this point, the wife got away and went back toward the house. Defendant, however, pulled a pistol from his pocket and fired three or four shots at pointblank range, hitting Homes three times in the head. Defendant was arrested almost two weeks later in New Orleans.
Defendant filed fifteen assignments of error. In brief, he has consolidated argument on assignment numbers 1 and 14, and on assignments of error numbers 2, 6, 7, 8, 9, 10, 12 and 15. Assignments of error numbers 3, 4, 5 and 11 are not argued and will not be discussed.[1] State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).

Argument No. I

(Assignments of Error Nos. 1 and 14)

By these assignments of error defendant argues that portions of the assistant district attorney’s opening and closing statements *184 were extremely prejudicial and improper and denied defendant due process as required by law. With respect to one remark by the prosecutor in closing argument, defendant contends that the trial court should have granted a mistrial.
Defendant’s argument in relation to these assignments of error are addressed to (1) a remark by the prosecutor indicating that defendant shot the deceased after the deceased had already been wounded and was lying on the ground. Defendant contends that this information came not from evidence introduced at trial but from a taped statement ruled inadmissible by the trial court; (2) the prosecutor’s remarks disregarded testimony of a witness that Holmes had a knife; (3) remarks by the assistant district attorney allegedly quoting a State witness, Mrs. Morrison, as testifying that she saw the deceased’s head bounce each time a shot was fired, when this evidence came from' inadmissible tapes and not from the record before the court; and (4) the remark by the prosecutor in closing argument referring to a crime committed by the defendant as to which evidence was not admissible.
(1) There was at least a justifiable inference from the evidence that defendant shot Holmes after Holmes had fallen to the ground. Four shots were fired. The testimony of the young witnesses fixed the time sequence of the shots. Holmes began to fall at the first shot. (2) The prosecution witness testified that Holmes was unarmed during the encounter; in a statement not admitted into evidence, she had said that Holmes carried a pocket knife, but made no effort to use it. (3) The prosecutor exaggerated testimony when he said in argument that Holmes’’ head bounced off the ground each time defendant shot. There is no such evidence in the record. Nevertheless, when counsel objected to the departure from the record, the jury was adequately admonished to rely on its own recollection of the testimony, not the lawyers’. (4) Evidence that defendant was on a pass from a correctional institution, and had been on parole after a conviction for simple robbery, was developed by cross-examination of defendant. The conviction itself was admitted by defendant on direct examination. There was no impermissible reference to other criminal conduct by the prosecution.

Argument No. II

(Assignments of Error Nos. 2, 6, 7, 8, 9, 10, 12 and 15)

Carrie Morrison, a woman in her mid-forties, was a principal witness for the prosecution. She was the mother of defendant, and, at least, a frequent and close companion of Holmes, who was killed. She told police what she had seen when they made their initial investigation of the shooting in her yard. A few days later she gave the police a tape-recorded account of the homicide, in which she detailed the killing, which she called “cold-blooded murder.” Her story depicted an unwarranted and brutal shooting of a would-be peacemaker.
At the trial, Mrs. Morrison could only recall that she “saw two hands go up; I heard the shots; and I saw Sonny (Holmes) on the ground; and I started screaming and hollering; and I don’t know nothing else after that. I just went for a blank — that’s it.” She not only testified that she remembered no more details, but that she did not want to remember-
The prosecutor was permitted to play Mrs. Morrison’s taped statement to her, out of the presence of the jury. She steadfastly denied that it refreshed her memory. The detectives who took the statement were called, but were not permitted to relate the contents of the statement.
These assignments of error relate to the prosecutor’s efforts to get before the jury the information contained. in Mrs. Morrison’s taped statement, the cumulative effect of which, argues the defense, was to deny a fair and impartial trial to the accused.
The record does not disclose any impropriety of the prosecutor in his efforts to place before the jury all available evidence of the homicide. The prosecution was vigorous and explored several avenues by *185 which the damaging past-recorded, presently-forgotten details of the offense might be revealed to the jury. The defense was alert and convincing. The trial judge properly ruled as requested by the defense, and the accused was protected from trial by any testimony except that recalled and related by witnesses before the jury. No damaging details contained in the statement were revealed to the jury.
Complaint is made of the prosecutor’s remark to defendant when he was on cross-examination, “Oh, you’re — you’re cute.” Upon a request for a mistrial, the court admonished the prosecutor and instructed the jury to disregard the remark. A mistrial was not required under C.Cr.P. 770. State v. Dupuy, 319 So.2d 299 (La.1975).
On his motion for a mistrial, the defense related that, after the trial, when a juror was told of the contents of Mrs. Morrison’s statement, he said, “That’s what we figured was on it.” When defense counsel asked if the verdict had been based on the statement, the juror said, “That wasn’t the only thing it was based on.”
The new trial was properly denied. Jurors are incompetent to impeach their own verdicts. R.S. 15:470. Nor is there any allegation of fact, even if proved by competent evidence, to show jury misconduct in reaching its verdict.
We find no error in the assignments complained of by defense, nor do we find that their cumulative effect was to deprive the accused of a fair trial.
With respect to defendant’s sentence: he was given life imprisonment without benefit of probation, parole or suspension of sentence for a period of forty years. However, at the time the offense was committed the legal sentence was life imprisonment without benefit of probation, parole or suspension of sentence for a period of twenty years. (The offense was committed on April 28,1974, while the effective date of the increased penalties for violation of R.S. 14:30.1 was September 12, 1975). The case, therefore, must be remanded to the trial court for resentencing.
The conviction is affirmed; the sentence is set aside; the case is remanded for resen-tencing.

. Although not argued in brief, among the specifications of error listed by defendant is a number 13, to the effect that the court erred in denying the defendant’s motion for a directed verdict because the State failed to produce any evidence to show that the defendant did not act in self-defense. There is no merit to the argument, The State produced several witnesses who testified in detail to the conduct of the defendant and the deceased immediately prior to the shooting. The factual evidence adduced by the State uniformly negated self-defense.